**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TAREK REED, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-2657 (RMU) |
| | : | | |
| v. | : | Document No.: | 21 |
| | : | | |
| ISLAMIC REPUBLIC OF IRAN *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
MOTION FOR RECONSIDERATION[1]; DIRECTING THE
PLAINTIFF TO FILE AN AMENDED COMPLAINT

**I.   INTRODUCTION**

This case involves the defendant's alleged support of Hizbollah, a terrorist group that abducted, held and tortured Frank Reed, the plaintiff's father, for more than three years. The plaintiff seeks damages from the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information Services ("MOIS"), collectively "the defendants," for injuries suffered by the plaintiff resulting from his father's kidnaping.

Presently before the court is the plaintiff's renewed motion for default judgment or "for reconsideration" pursuant to Federal Rule of Civil Procedure 54(b). Because the plaintiff's renewed motion largely rehashes arguments previously rejected by the court, the court denies in part the plaintiff's motion to reconsider. Because the plaintiff convinces the court that its claim for loss of solatium actually alleges loss of consortium (a recognizable claim under the applicable

---

[1] Because the plaintiff seeks reconsideration of an interlocutory judgment, see *infra* at 5-6, the defendant actually asks the court to alter or amend the judgment interlocutory judgment under Federal Rule of Civil Procedure 54(b).

state law), the court grants in part the plaintiff's motion and directs the plaintiff to file an amended complaint.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff alleges as follows.  On September 9, 1986, Frank Reed, the plaintiff's father, was kidnaped by Hizbollah in Lebanon on his way to a golf course.  Pl.'s Mot., Attach. A (Fifi Reed Aff.) ¶ 4.  During 1,330 days of confinement, Reed was at times blindfolded, resulting in several eye infections, and he was subjected to routine beatings by his captors, who assumed that he worked for the CIA.  Pl.'s Mot., Attach. B, (Frank Reed Test.) at 97-99  When Reed once saw one of his captors' faces, he was beaten for four straight days, resulting in kidney damage and causing him to bleed when urinating.  *Id.* at 103.  Reed's captors beat him with a grenade, causing him partial hearing loss, kicked him in the ribs causing his ribs to protrude through his skin, and placed a boiling tea kettle on his shoulders causing permanent scarring.  *Id.* at 104-106.  Reed was housed in a small cell and chained to the wall such that he was unable to sit down.  *Id.* at 107.  Following an escape attempt, Reed was exposed to cold weather wearing little clothing.  *Id.*  In addition to this physical torture, Reed was psychologically tortured; his captors promised him he would be released, only to renege repeatedly on that promise.  *Id.*  At the conclusion of his captivity, Reed had lost more than fifty pounds.  *Id.* at 105.

The plaintiff alleges that Iran directed the establishment of Hizbollah with the purpose of eradicating western cultural influence in Lebanon.  Compl. ¶ 4.  Iran provided between fifty million and one hundred million dollars per year to Hizbollah.  Pl. Mot., Attach. F (Hurley Test.)

at 15; *Id.*, Attach. E, (Clawson Test.) at 72-78. Reed's kidnaping was orchestrated by the "highest levels" of the Iranian government with the assistance of the MOIS. Hurley Test. at 20.

Tarek Reed was six years old when his father was kidnaped. Pl. Mot., Attach., C (Fifi Reed Test.) at 97; *Id.*, Attach. J at 17. Throughout Reed's detention, the plaintiff's mother told him that his father was away working for the family, and "never told [him] that his dad was kidnaped." Fifi Reed Test. at 131. Thus, the plaintiff remained unaware of Reed's kidnaping through its duration. *Id.* After hearing rumors about his father at school, his mother told him that "[d]addy is somewhere. He is in a house. He is not being harmed, but he can't leave." *Id.*

Frank Reed was released from captivity after three and a half years and he promptly returned to the United States to rejoin his family. *Id.* at 115. Doctors in the United States found that he had been poisoned with arsenic and that he suffered from chronic depression and post-traumatic stress syndrome. *Id.* at 117-125.

Frank Reed's behavior changed drastically following his return to the United States. Fifi Reed Test. at 133. He started drinking excessively and rarely left his house, he would "walk out on the streets barefooted," and he would randomly just lie down in the grass. *Id.* at 135. He had difficulty sitting still, and could not walk, run, or dance – activities he regularly participated in prior to his abduction. *Id.* at 141. Reed is currently receiving social security disability benefits. Frank Reed Test. at 124.

The plaintiff, a teenager when his father returned to the United States, was deeply affected by these changes. Fifi Reed Test. at 140. Fellow students in school would call attention to Frank Reed's plight, saying, "we saw your father in a magazine, and he was picked up by the police." *Id.* As a result of the changes to Frank Reed, the plaintiff began alienating his father,

*id.,* sometimes confronting him saying, "[w]hy are you killing yourself [and] making yourself end up in the hospital." Pl.'s Mot., Attach. L (Price Rep.) at 7.

The plaintiff's family circumstances also adversely affected his academics. *Id.* at 9. In 1993, the plaintiff received his first psychiatric examination, which determined that he had a loss of focus. *Id.* at 3. According to the plaintiff, these academic difficulties affected him professionally and have limited his career choices. *Id.* at 9. He attended college part-time but dropped out due to chronic depression. Pl.'s Mot., Attach. M at 9. As a result of his father's illness, the plaintiff engaged in self-destructive and self-defeating behavior. Price Rep. at 10. Significant consumption of alcohol and marijuana while a junior and senior in high school coincided with many of his father's most severe psychiatric difficulties. *Id.* at 6. The plaintiff became "terribly upset" when his father was not doing well and the plaintiff held chronic feelings of helplessness and anger toward his father's situation. *Id.* at 10.

### B.   Procedural Background

The plaintiff filed a complaint against defendants Iran, MOIS, Ali Fallahian-Khuzestani, Ali Akbar Hashemi-Rafsanjani, the Iranian Revolutionary Guard Corp., and Mohammad Mohammadi Nik on December 30, 2003. Because the defendants failed to appear or respond to the plaintiff's complaint, the Clerk of the Court entered default on July 15, 2004.

On June 13, 2005, the plaintiff filed a notice of voluntarily dismissal as to defendants Mohammad Mohammadi Nik, Ali Fallahian-Khuzestani, Ali Akbar Hashemi-Rafjsani, and the Iranian Revolutionary Guard Corp. Additionally, following the D.C. Circuit's ruling in *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004), the plaintiff abjured his claim for relief under the Flatow Amendment as an independent cause of action. Thus, as to the

remaining defendants, Iran and MOIS, the plaintiff's remaining claims are hostage taking, torture, arbitrary and prolonged detention, intentional infliction of emotional distress and solatium.

On July 17, 2006, the court issued a Memorandum Opinion denying the plaintiff's motion for default judgment. Mem. Op. (July 17, 2006). The court ruled that the plaintiff lacks third party standing as to hostage taking, torture, and arbitrary and prolonged detention, Mem. Op. at 10, that the plaintiff failed to establish a prima facie case of intentional infliction of emotional distress under Massachusetts law, *id.* at 18, and that loss of solatium is not an independent legal cause of action, *id.*, at 20. Dissatisfied with these legal rulings, the plaintiff filed the instant motion for reconsideration, to which the court now turns.

### III.   ANALYSIS

#### A.   Legal Standard for Altering or Amending an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing Federal Rule of Civil Procedure 60(b)'s Advisory Committee Notes). The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996). A motion pursuant to 59(e), to alter

or amend a judgment after its entry, is not routinely granted. *Harvey*, 949 F. Supp. at 879. The primary reasons for altering or amending a judgment pursuant to Rule 59(e) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). Motions pursuant to Rule 60(b) may be granted for similar reasons. FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52. Reconsideration of an interlocutory decision is available under the standard, "as justice requires." *Childers*, 197 F.R.D. at 190.

    **B. The Court Denies in Part the Plaintiff's Motion for Reconsideration**

  The plaintiff asks the court to amend its prior ruling denying the plaintiff's motion for default judgment to correct a clear legal error. Pl.'s Mot. The court notes at the outset that "[m]otions for reconsideration . . . are not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Black v. Tomlinson*, 235 F.R.D. 532, 533 (D.D.C. 2006) (internal quotations omitted). And, in that vein, the court notes that the plaintiffs' renewed motion is just that – "little more than a rehash of the arguments" previously argued and rejected by the court. *Id.* at 533. The plaintiff's arguments do not undermine the court's confidence in its prior legal rulings. And for the reasons previously stated by the court in its July 17, 2006 Memorandum Opinion, the court rejects the arguments now raised by the plaintiff as to all claims save the claim for loss of consortium.

    **C. The Court Grants in Part the Plaintiff's Motion for Reconsideration**

  Count VI of the plaintiff's complaint alleges loss of solatium under the common law of Massachusetts. Compl. ¶¶ 36-37. Previously, the court concluded that default judgment as to this claim was inappropriate because loss of solatium is not an independent cause of action but

rather, represents a form of damages. Mem. Op. at 20. Nothing the plaintiff has stated in its current motion undermines that legal ruling. Nevertheless, the plaintiff now characterizes its claim for loss of solatium as one for loss of parental consortium. Pl.'s Mot. at 5. In support of this assertion, the plaintiff identifies several Massachusetts state court rulings which seem to indicate that loss of consortium is a recognized cause of action in that jurisdiction. *Id.* And as previously addressed by this court, in considering the plaintiff's claims, Massachusetts law controls. Mem. Op. at 15.

The court cannot fathom why the plaintiff's complaint identifies count VI as a cause of action for loss of solatium, when the plaintiff intended a claim of loss of consortium. And though this switch may constitute a juridical slight of hand, depriving the plaintiff of the opportunity to litigate this claim solely because the plaintiff's complaint as drafted by counsel identifies solatium (a form of damages) rather than directly referencing consortium (the predicate cause of action for recovery of solatium damages), would not serve the ends of justice. "When the client's only fault is his poor choice of counsel," the court will not deprive the plaintiff of the opportunity to litigate the claim. *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 448 F. Supp. 2d 92 (D.D.C. August 24, 2006) (internal quotations omitted). Accordingly, the court grants the plaintiff's motion for reconsideration as to his loss of consortium claim.

### D.     The Court Orders the Plaintiff to Submit an Amended Complaint

In this case, the plaintiff's midstream course correction from solatium to consortium muddles the procedural waters. The Foreign Sovereign Immunities Act indicates the requirements for service upon a foreign state. 28 U.S.C. § 1608. Among the various requirements, the plaintiff must provide the foreign state with notice of the suit. *Id.* Notice is

deemed adequate if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Just as the plaintiff's loss of solatium claim misdirected the court, so too could it have misdirected the defendant. Prior to holding the defendants in default as to the plaintiff's consortium claim, the court must be sure that prior notice was adequate. Accordingly, to ensure notice, and to account for the plaintiff's late change in case theory, the court orders the plaintiff to file an amended complaint identifying the precise legal theory and factual allegations underlying the plaintiff's consortium claim.

So as not to leave any outstanding matters to assumption, the court expects the plaintiff's amended complaint to take account of the court's legal rulings made in this case; that is, the court's order that the plaintiff file an amended complaint is not an invitation for the plaintiff to re-bring claims previously rejected by this court in its July 17, 2006 Memorandum Opinion.

### IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for reconsideration. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of April, 2007.

                                                      RICARDO M. URBINA
                                                  United States District Judge